## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEMETRIC L. SLAUGHTER** | ) | **NUMBER:** |
|     **Plaintiff** | ) | |
| | ) | |
| | ) | **SECTION:** |
| **VERSUS** | ) | |
| | ) | |
| | ) | **JUDGE:** |
| | ) | |
| **EXXON MOBILE CORPORATION** | ) | |
| | ) | **MAGISTRATE:** |
|     **Defendant** | | |

## COMPLAINT

### I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. 1981. Jurisdiction is founded on 28 U.S.C. Sections 1331 and 1343. Supplemental jurisdiction over claims under state law is also invoked pursuant to 28 U.S.C. Section 1367 to hear claims under Louisiana Civil Code articles 2315, 2316 and 2320 and LSA R.S. 23:311, 321, 331 *et seq*. A jury trial is requested.

### II. PLAINTIFF

2. Plaintiff, Demetric L. Slaughter, is an African –American female over the age of forty, who resides in West Baton Rouge Parish in the Western District of Louisiana. She filed a timely complaint with the EEOC and is filing this action within the requisite timeframe.

### III. DEFENDANT

3. Defendant, Exxon Mobile Corporation, an international corporation, was at all relevant times referenced herein operating in East Baton Rouge Parish, State of Louisiana in the Middle District of Louisiana.

## IV. STATEMENT OF FACTS

4. Firstly, ExxonMobil has a history of racial harassment in the workplace. The company was sued by EEOC on March 2, 2023, for race discrimination, when Black employee at when Baton Rouge Chemical plant found hangman's noose at his worksite in January 2020. About three months later the federal government sued the Baton Rouge worksite on June 13, 2023, where a different employee brought a separate lawsuit alleging that the company failed to protect him from a coworker's racial hostilities.

5. Plaintiff started her employment with ExxonMobil in May 1990 as a Laboratory Technician. Since she had a degree in Business Management, she moved to the Administration Department where she had a total of five jobs and seven supervisors. She never had a bad assessment nor negative reference put in her personnel file.

6. Secondly, she did not voluntarily retire in December 2022 while working as an Inventory Control Analyst Team Lead. On September 6, 2022, she was forced to retire and she retired as an Accounts Payable Analyst under duress and protest when she made a dispute claim on the evaluation that her supervisor, Brett Murry made on August 11, 2022 one day prior to her vacation.

7. She had a telephone conversation with Human Resource on September 7, 2022, in regard to what would be her effective retirement date. The Human Resource department never addressed her complaint.

8. Brett Murry came to the Administration Department on January 1, 2022. ExxonMobil evaluates its employees annually from April the previous year to April the present year.

Therefore Murry only had supervised Plaintiff for three months while he was still in his supervisory training.

9. Plaintiff's last five assessments were as follows: April 1, 2017 to April 1, 2018 she was assessed a letter "C"/Inventory Control Analyst; April 1, 2018 to April 1, 2019 she was assessed a letter "B"/Inventory Control Analyst Team Lead; April 1, 2019 to April 1 2020 she was assessed a letter "C" on the high side/Accounts Payable Analyst; April 1, 2020 to April 1, 2021 she was assessed a letter "C" same as the previous assessment; and finally April 1, 2021 to April 1, 2022 under Murry's supervision, she was assessed a letter "D". She received a Stewardship Award in 2021 for catching a million-dollar contractor payroll invoicing error. In March 2022.

10. Murry and Plaintiff met to complete a rough draft and later a final draft for her assessment. It was during this meeting that he asked Plaintiff if she had given some consideration to retirement, and she told him no. Nevertheless, he still gave Plaintiff some retirement websites to review.

11. Around the month of May 2022, Murry asked Plaintiff if she had reviewed the retirement websites. Then, she noticed that the Business Support Lead, Tonya Genre, white female, began to ask Plaintiff about retirement, also

12. Thirdly, Plaintiff was the only black employee in the Business Support group. Over the previous three years, there was a removal of four black ExxonMobil employees and six black contractor employees who were replaced with white employees.

13. Plaintiff noticed that Murry began to treat her differently once he came on board in January 2022. On March 10, 2022, Plaintiff set up a meeting with Murry which Plaintiff has a cell phone recording. He would jump to conclusions by taking sides with Tonya Genre and

3

other internal white employees in regard to work related issues before reaching out to her to get full details.

14. Then Plaintiff noticed how he treated her differently from other white coworkers in monthly Stewardship meetings. In the June and July meetings, he would never make a comment after she made her presentations, but he would always make good comments after the white coworkers made their presentations.

15. He planned two team functions in the month of August during the week of her vacation, therefore she was not able to attend their team's onsite snowball event on 8/12/2022 and the luncheon on 8/19/2022.

16. Since she was taking vacation, Plaintiff had to train Recie Hollomon, a white contractor, to backfill her payroll duties. It was discovered that Ms. Hollomom was making more money than Plaintiff even though Plaintiff had more experience than Hollomon. When Murry found that out, he advised Plaintiff that she no longer had to process her payroll. Murry moved Hollomon to another payroll system.

17. Moreover, around August 1 through August 11, 2022, Plaintiff noticed that her supervisor began to avoid her. He would no longer say "good morning" to her as he once did and then he began to tell everyone individually at their office doors to have a good weekend as he left the office on Fridays.

18. Upon returning back to work on August 22, 2022, from vacation, Murry sent her an email asking her to train Tonya Genre, white female, who had retired in May 2022, but my supervisor hired her back as a contractor. Plaintiff asked Ms. Genre what she would be doing, and Ms. Genre said that she was only working part-time to help Brett for a little while. As the Business Lead, Tonya was still training Brett in his supervisory role.

19. Lastly, after all the stress that was upon Plaintiff as she was forced into retirement under duress and protest.  The stress took an effect on Plaintiff's body as her blood pressure elevated.

20. Her primary care physician put her on blood pressure medicine and bed rest.  He diagnosed job-related stress and referred her to a psychologist who diagnosed an anxiety disorder as well as placed her on meds. Her psychologist also referred her to a therapist and is still under the psychologist and therapist care for treatments.

21. In the month of October 2022, Plaintiff's supervisor and Human Resource officers harassed her about my retirement effective retirement date.  They harassed her about her medical condition through the medical department.  She has the record where she was contacting medical after each doctor and therapist visits.

22. On October 31, 2022, Plaintiff received a call from ExxonMobil Risk Management department advising her that there was a medical case in process for an investigation in regard to her medical leave.  After the investigation, Risk Management advised her that she was not eligible for Workman's Comp and that they would inform her supervisor.

23. On December 2, 2022, Plaintiff reached out to Human Resource advising them that she had returned all of the ExxonMobil items through certified mail. The company contacted her to discuss her retirement gift.  She sent an email to Human Resources and her supervisor in reference to her retirement party.  Retirees are entitled to a $5,000 retirement budget. As of August 8, 2023, she has not received a response back from her supervisor nor Human Resource regarding the anticipated retirement event.

24. In essence and in fact, Plaintiff's supervisor, Brett Murry, forced her to retire in order to bring Tonya Gene back from her retirement.  She was hired back as a contractor to replace

5

Plaintiff. Based on his action, Murry was driven to get rid of Plaintiff so he could hire a less experienced white employee.

25. Plaintiff was a seasoned employee who worked faithfully for 32 years without incident until Murry launched an attack on Plaintiff's competence and credibility. As a matter of fact, Plaintiff received commendations over the years in training employees and filling in whenever and wherever necessary to support the company. Plaintiff saved the company on many occasions be catching accounting errors.

## CAUSES OF ACTION

Discrimination in Violation of 42 U.S.C. §2000e, *et seq*. (Title VII) for Age, Race, Disability, and Retaliation

26. Plaintiff re-alleges all facts listed in paragraphs 4 – 25.

27. The actions of Defendant as described herein, display a wanton and reckless disregard for Plaintiff's federally-protected civil rights and rights granted by Louisiana law.

28. Furthermore, Defendant is liable under federal law for not training its managers on federal laws regarding racial and disability-based discrimination and retaliation.

29. Defendant intentionally, knowingly, recklessly, and excessively violated Plaintiff's civil rights in allowing Plaintiff's supervisor(s) to retaliate against Plaintiff in requesting reasonable accommodation and inquiring as to why Plaintiff was denied reasonable accommodation under Federally-mandated anti-retaliation law.

30. Defendant's conduct proximately caused significant injuries and damages to Plaintiff for damages cause by Defendant's actions, *inter alia*:

> i. Failing to establish, implement, operate, maintain, or enforce adequate or reasonable policies, practices, customs, and procedures that recognize, protect, and ensure adherence to Plaintiff's civil rights;
>
> ii. Failing to provide adequate or reasonable training, supervision, monitoring

      or control of managers or supervisors, including the managers referenced herein, so that managers carry out their duties without infringing upon Plaintiff's civil rights; and

   iii. Failing to hold supervisors and managers responsible for the misconduct of their subordinates; and

   iv. Failing to provide adequate or reasonable training, supervision, monitoring, or control of managers or supervisors, including the managers references herein, so that managers carry out their duties without retaliating against Plaintiff.

   v. Creating and maintaining a hostile work environment.

## VI. DAMAGES

31. As a result of the actions of the Defendant as described above, Plaintiff has suffered damages, as follows:

   a. Plaintiff suffered severe physical, mental, emotional injury and pain and suffering;

   b. Plaintiff suffered loss wages, loss of all benefits, humiliation, impairment of reputation, based on terms and conditions of employment; and

   c. All other damages provided by statute or law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that after due proceedings, there be judgment on her behalf and against Defendant, for damage, *inter alia*:

1. Compensatory damages;

2. Reasonable attorney's fees and all costs associated with these proceedings;

3. That judicial interest be awarded from the date of judicial demand;

4. That this matter be tried by a jury; and

5. All other relief that this Court deems just and proper and any other relief as allowed by law as prayed for herein.

Respectfully submitted,

LAW OFFICE OF MARION D. FLOYD

/s/Marion D. Floyd_____
MARION D. FLOYD (LSBA No. 22902)
1403 West Esplanade Ave., Suite A
Kenner, LA 70065
Phone:  (504) 467-3010
Fax:     (888) 651-4651
Email: floydmar@bellsouth.net

*Attorney for Plaintiff*