**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


DEMETRIC L. SLAUGHTER                                     CIVIL ACTION

versus

                                                          23-cv-1642-SDD-RLB

EXXON MOBILE CORPORATION


## RULING

This matter comes before the Court on the Motion for Summary Judgment[1] filed

by Defendant Exxon Mobil Corporation (erroneously sued as "Exxon Mobile Corporation")

("ExxonMobil" or "Defendant"). Plaintiff, Demetric L. Slaughter ("Slaughter" or "Plaintiff")

filed an Opposition[2] to Defendant's Motion, to which Defendant filed a Reply.[3] For the

reasons set forth below, Defendant's Motion will be granted.

## I.    LOCAL RULES OF THE MIDDLE DISTRICT OF LOUSIANA

Parties are required to comply with the following Local Rules of the Middle District

of Louisiana in filing and opposing motions for summary judgment.   Local Rule 56(f)

provides:

> Facts contained in a supporting or opposing statement of material facts, if
> supported by record citations as required by this rule, shall be deemed
> admitted unless properly controverted. **An assertion of fact set forth in a
> statement of material facts shall be followed by a citation to the
> specific page or paragraph of identified record material supporting the
> assertion**. The court may disregard any statement of fact not supported by

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 37.
[3] Rec. Doc. 41. Plaintiff moved for leave to file a Sur-Reply (Rec. Docs. 42, 45) which will be denied for reasons discussed *infra*.

a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

Local Rule 56 (c) requires an opposing party to:

> submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule. (emphasis added).

Unless otherwise indicated, the Factual Background below is comprised almost entirely of facts deemed admitted for purposes of this Motion based on Plaintiff's failure to comply with Local Rules 56(c) & (f) of the Middle District of Louisiana. Plaintiff failed to comply with the foregoing rules by failing to admit, deny, or qualify any of Defendant's offered statements of fact. Thus, Defendant's facts, where supported by appropriate record citation, are deemed admitted.[4]  Plaintiff submitted her own purported statement of contested material facts;[5] however, these are not statements of fact with supporting citations to the record; rather, they are styled as questions, such as "[w]hether Brett Murray was trained adequately to serve as manager at the facility where Plaintiff

---

[4] *See* Rec. Doc. 32-2.
[5] Rec. Doc. 37-1.  The Court ordered Plaintiff to re-file this document by close of business on August 6, 2025 because it was improperly submitted on legal size paper.  Plaintiff timely submitted a correctly formatted version of this document that was substantively identical to the original. *See* Rec. Docs. 38, 39, 40.

worked[.]"[6] None of Plaintiff's "contested fact" inquiries constitute "facts" that controvert Defendant's offered statements of undisputed facts, nor do they demonstrate genuine disputes of material facts based on summary judgment evidence.

Nevertheless, another section of this Court explained in *Braud v. Wal-Mart Stores, Inc.* that "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute."[7] To the extent Plaintiff directed the Court in her opposition memorandum to specific, countervailing summary judgment evidence demonstrating genuine disputes of material fact as to claims that are properly before the Court, the Court will consider same.

## II.    PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY

Following Plaintiff's substitution of her Statement of Contested Facts, Defendant filed a Reply wherein it noted Plaintiff's failure to comply with Local Rule 56. After notice of this failure, Plaintiff moved to file a Sur-Reply[8] and attached the proposed memorandum,[9] which is essentially Plaintiff's attempt to rectify the mistake by submitting evidentiary support for her purported contested facts. Contemporaneous with this Motion, Plaintiff also filed a Motion to Adopt Defendant's Corporate Records Filed Under Seal Rec. Doc. 36, wherein Plaintiff seeks leave to adopt Defendant's business records *en*

---

[6] Rec. Doc. 37-1.
[7] No. 3:17-CV-320-JWD-EWD, 2019 WL 3364320 at *4 (M.D. La. July 25, 2019)(citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998)(holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647 at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.)(relying on *Smith* and holding, when Plaintiff's opposition left "no doubt about his disagreement with either the basis or import of each of Plaintiff's undisputed facts," that Plaintiff would have forty-eight hours from the issuance of the ruling to comply with the Local Rule, and ultimately denying the motion for summary judgment)).
[8] Rec. Doc. 42.
[9] Rec. Doc. 42-1.

*globo,* "rather than burden the record with duplicate copies under seal."[10]  Because these motions were formatted improperly, Plaintiff re-filed them, but they are substantively unchanged.[11]

Defendant opposes these motions on several grounds.  First, Defendant contends Plaintiff's proposed "Sur-reply" is improper because it is "not a true surreply memorandum/brief responding to ExxonMobil's reply; rather, it is an improper attempt to try to remedy deficiencies in her earlier opposing statement of material facts required pursuant to Local Rule 56(c)[.]"[12] Second, Defendant claims that, because this is really a correction of Plaintiff's Statement of Uncontested Facts, and the Court allowed Plaintiff until August 6, 2025 to substitute the document, this corrected version of her Statement of Uncontested Facts is untimely as it was filed over three weeks later and only in response to Defendant's Reply.[13]  Third, Defendant maintains Plaintiff has failed to meet the high standard of demonstrating "exceptional or extraordinary circumstances warranting" a sur-reply, such as a need to identify "new issues, theories, or arguments which the movant raised for the first time in its reply brief."[14]  Defendant points out that Plaintiff's motion for leave addresses none of these factors and ignores the heavy burden to meet for leave to grant a sur-reply. Defendant argues Plaintiff "should not be granted what is essentially a 'do over' of that submission improperly characterized as a 'surreply memorandum.'"[15]  Fourth, Defendant asks the Court to deem admitted all of its proposed Statements of Undisputed Fact because, even in the purported sur-reply, Plaintiff still

---

[10] Rec. Doc. 43.
[11] *See* Rec. Docs. 45, 46.
[12] Rec. Doc. 44, p. 1.
[13] *Id.* at p. 2.
[14] *Id.* at pp. 2-3 (quoting *Weems v. Hodnett,* 2011 WL 2731263, at *1 (W.D. La. 2011) (citing numerous cases)).
[15] *Id.* at p. 3.

failed to comply with Rule 56(c) because she did not admit, qualify, or deny any of Defendant's facts.[16]

### A.    Standard to File Sur-reply

"[I]n seeking leave to file a surreply brief, a party must identify the new issues, theories, or arguments which the movant raised for the first time in its reply brief."[17] In *Muslow v. Bd of Supervisors of LSU*, the court noted that: "A surreply is not the appropriate vehicle to shore up arguments or present evidence that could have been presented in a timely fashion. It is not an opportunity for a do-over."[18] The court explained that, in *Muslow*, the extraordinary circumstances required for a surreply (e.g., new arguments raised for the first time in a reply) were not urged or established there. The court noted that: "To achieve an orderly presentation of the parties' respective positions, courts must establish and enforce briefing schedules that accord the parties a fair opportunity to marshal their arguments and evidence, and then to respond to the other side. But courts are not required to allow parties who squander their opportunity another crack at it – especially two months after briefing had closed."[19]

In *H-W Technology, Inc. v. Overstock.com, Inc.*, the court noted that: "Leave to file a sur-reply is unwarranted . . . where the proposed sur-reply merely restates the arguments made in the party's initial response.[20] In that case, the court found that the plaintiff failed to provide any justification for a sur-reply; further, the defendant's alleged

---

[16] *Id.* at pp. 3-4.
[17] *Weems*, at *1.
[18]  19-11793, 2022 WL 3445716, *4 (E.D. La. Aug. 17, 2022).
[19] *Id.*
[20] No. 3:12-CV-0636-G(BH), 2014 WL 4378750, *2 (N.D. Tex. Sep. 3, 2014)(citing *e.g.*, *Williams v. Aviall Serv. Inc.*, 76 F. App'x 534, 535 (5th Cir.2003) (affirming denial of motion for leave to file a sur-reply because it did not include additional arguments or evidence)).

assertion of inaccurate facts did "not amount to new evidence."[21]

### B.    Analysis

Applying the legal standard to Plaintiff's Motion for Leave to File Sur-reply, the Court finds that leave should not be granted.  It is clear that Plaintiff is not challenging any alleged newly-presented legal theories raised by Defendant in its Reply; rather, Plaintiff simply wants an opportunity to continue the argument and correct mistakes and omissions made in her Opposition.  There are also several deficiencies in the sur-reply that render it unsustainable.

First, the proposed sur-reply does not address Defendant's argument that Plaintiff has no retaliation claim.  In its Reply, Defendant contends Plaintiff's pleadings show that her only claim is for race discrimination under Title VII,[22] and Defendant cites Plaintiff's own deposition testimony acknowledging this fact.[23]    Defendant also successfully challenged Plaintiff's timeline of events with summary judgment evidence;[24] Plaintiff's sur-reply does not address this issue either. Defendant also criticized Plaintiff's "attempts to characterize (for the first time in her opposition brief) her retirement as a constructive discharge";[25] Plaintiff's proposed sur-reply ignores this as well.

In addition to these substantive failures, Plaintiff's proposed sur-reply and statement of disputed facts *still* fails to comply with Local Rule 56's requirement to admit, deny, or qualify Defendant's offered statements of undisputed facts; Plaintiff's general,

---

[21] *Id.* (citing *Branton v. City of Dallas*, No. Civ.A:3:97–CV–0245–P, 1999 WL 765646 (N.D. Tex. Sept. 23, 1999) (denying motion for leave to file a sur-reply correcting inaccuracies in the reply, finding "that no justification for the filing of materials outside the normal course of briefing has been shown."), *rev'd on other grounds, Branton v. City of Dallas*, 272 F.3d 730 (5th Cir. 2001).

[22] Rec. Doc. 41, p.1.

[23] Rec. Doc. 32-3, Plaintiff's Depo, p. 232:4-7.

[24] Rec. Doc. 41, pp. 2-3.

[25] *Id.* at p. 3 (citing Rec. Doc. 39-2, pp. 1-2).

blanket denial of all eighty-four (84) facts does not suffice.  Plaintiff also *still* fails to demonstrate that she satisfies a *prima facie* case of Title VII race discrimination.  And Plaintiff's Motions for Leave never address the untimeliness of the filings. Accordingly, Plaintiff's Motions for Leave to File Sur-Reply are DENIED.[26]

Plaintiff also filed a Motion to Adopt Defendant's Rec. Doc. 36 Business Records.[27] This motion is denied as moot given the Court's denial of leave to file a sur-reply. Nevertheless, even if the Court allowed Plaintiff to adopt Defendant's business records, Plaintiff inappropriately cites the documents in a general fashion.  For example, as to Plaintiff's purported disputed fact No. 2, "whether Brett Murray had sufficient exposure to Plaintiff's work/performance to complete Plaintiff's evaluation," Plaintiff discusses several documents but cites only: "(The referenced documents are filed under seal Rec. Doc. 36)."[28] The Fifth Circuit has repeatedly held that blanket citations are improper on summary judgment.

"When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."[29] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[30] In *Wilkerson v. Parish of Jefferson*, the court addressed the plaintiff's "blanket reference" to record evidence and stated: "This tactic of generally

---

[26] Rec. Docs. 42, 45.

[27] Rec. Docs. 43, 46.

[28] Rec. Doc. 42-1, p. 3.

[29] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)).

[30] *Id.* (citing, *inter alia, Ragas*, 136 F.3d at 458). *See also Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

referring to exhibits in the entirety is insufficient."[31] And the Court "decline[d] to ferret out evidence that [Plaintiff] [was] responsible for presenting."[32]

## III.    FACTUAL BACKGROUND

This lawsuit arises out of an employment dispute between Plaintiff and Defendant. Plaintiff, an African American female, served as an administrative employee at ExxonMobil's Port Allen, Louisiana plant.[33] She was hired by ExxonMobil in May 1990 to work in the lab as a technician; at some point during the early 2000's, she began performing administrative roles and did so until her November 2022 retirement.[34]

ExxonMobil has multiple policies and procedures that apply to its employees, including ones prohibiting unlawful discrimination, harassment, and retaliation.[35] These policies and procedures are distributed to employees and are also posted in certain areas around the plant.   ExxonMobil provides multiple opportunities to lodge complaints and provides regular training on these policies.[36]

ExxonMobil also utilizes an annual multi-step performance assessment process for its employees.[37] The annual performance assessment period runs from April of one calendar year through March of the following calendar year.[38] The process begins in the Spring with each employee completing the self-assessment portion of their Performance

---

[31] No. 20-3031, 2021 WL 4989899, at *15 (E.D. La. Oct. 27, 2021)(citing *Smith*, 391 F.3d at 625 (explaining that parties should include specific citations to summary judgment evidence); Del Carpio Frescas, 932 F.3d at 331 ("Judges are not like pigs, hunting for truffles buried in the record.") (quotation marks and citation omitted).

[32] *Id.*

[33] Rec. Doc. 32-3, Plaintiff's Depo, pp. 35:14-25, 54:12-55:22, 56:17-58:9; Rec. Doc. 32-4, Adame Decl. ¶13.

[34] *Id.*

[35] *Id.* at pp. 56:9-16, 69:24-80:3, Exh. 2-5; Rec. Doc. 32-4, ¶¶ 2-5, Exh. 1-4; Rec. Doc. 32-6, Peterson Decl., ¶ 2.

[36] *Id.*

[37] Rec. Doc. 32-3, pp. 87:8-101:11; Rec. Doc. 32-4, ¶¶ 6-11; Rec. Doc. 32-5, Murray Decl., ¶¶ 8-11; Rec. Doc. 32-6, ¶¶ 5-9.

[38] *Id.*

Discussion Summary ("PDS").[39] Employees are placed in their applicable assessment group, comprised of employees with similar job classifications in similar roles across the organization. This does not mean the employees within each applicable assessment group necessarily have the same job titles, work in the same locations, or have the same supervisors.[40] During the summer, a multi-member committee (comprised of various supervisors and facilitated by Human Resources ("HR")) assesses the performance of employees in the applicable assessment group. The assessment is relative: employees are assessed based on how they performed relative to the other employees in the assessment group during the assessment period.[41]

Each assessment period stands alone in that only the performance during the applicable assessment period is relevant. The committee then assigns employees their final performance assessment category based upon their relative performance for the assessment period. For Operations, Clerical, and Administrative ("OCA") employees, the relative performance assessment categories are A, B, C, or D, with "A" being the highest category and "D" being the lowest. Each year there is a minimum and maximum number of employees allowed in each category (in other words, not every employee can be an "A").[42]

ExxonMobil believes this assessment process serves the Company's principles of meritocracy, performance differentiation, and continuous improvement.[43] No single individual can assign a performance assessment category to an employee.[44] Rather,

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

allocation of the assessment categories is a committee process that involves input from multiple supervisors, higher level management, and a review from HR. While a direct supervisor may have a preliminary category in mind for their direct reports, that preliminary assessment does not control. During the group discussion with other supervisors about the relative performance of all employees in the assessment group, individual preliminary assessments can change.[45] Ultimately, the goal is reaching a group consensus on the employee's relative performance (i.e., how the employees' performance stacks up to the other members of the group). Based on this relative performance assessment, each employee is assigned their final performance category.[46]

Employees assessed as a "D" are placed into ExxonMobil's Management of Lower Relative Performance ("MLRP") program.[47] Under the MLRP program, employees are offered the option to: (a) continue working under a performance improvement plan ("PIP") with the goal of improving their performance to be more competitive with their peers; (b) stop working actively but continue to receive their base salary/benefits and outplacement services for a designated period of time prior to resigning on a specified date, in exchange for signing a separation agreement and release of claims (*i.e.*, the pay-in-lieu ("PIL") option); or (c) retire if retirement eligible.[48]

In 2014, Plaintiff became an Inventory Control Analyst, which is an OCA position. In this role, she was responsible for balancing the inventory from the production runs and blends.[49] Her last performance assessment in this role was for the April 2017 – March

---

[45] *Id.*
[46] *Id.*
[47] Rec. Doc. 32-3, pp. 100:1-101:11; Rec. Doc. 32-4, ¶ 12; Rec. Doc. 32-5, ¶ 12; Rec. Doc. 32-6, ¶ 10.
[48] *Id.*
[49] Rec. Doc. 32-3, pp. 56:17-58:9, 62:9-17, 63:1-64:22, 101:16- 104:13, Exh. 6; Rec. Doc. 32-4, ¶¶ 13-14, Exh. 5.

2018 assessment period, when she received a "C" assessment. Plaintiff testified that she did not think this "C" assessment was based on her race.[50] Around 2019, Plaintiff became an Accounts Payable Analyst, which is also an OCA position. In this role, she was responsible for the site's outstanding payments, including making sure payments were timely made and resolving non-payment or late payment issues.[51] In this role, Plaintiff primarily reported to Nicole Peterson ("Peterson"), but she was occasionally also supervised by Tonya Genre ("Genre"), who backfilled for Peterson (*i.e.*, as a "step up" supervisor).[52]

Peterson attested that Plaintiff was a mostly below average performer because she was frequently delinquent on completing tasks, kept invoices outstanding for too long, was generally slower than her peers, was weak in troubleshooting, and failed to take ownership and initiative in her job.[53] Plaintiff's below average performance was readily apparent during the relative assessment process while Peterson and Genre supervised her work.[54] For example, during the April 2019 through March 2020 assessment year, Plaintiff again received a "C" assessment, with Peterson noting Plaintiff's deficiencies in work quantity and troubleshooting and Genre noting her deficiencies in analytical/troubleshooting skills and not taking a more proactive approach before escalating matters.[55] Plaintiff testified that she did not disagree with this "C" assessment.[56] Plaintiff failed to improve during the next assessment year. For the April 2020 – March 2021 performance assessment period, Plaintiff was again assessed as a "C," with

---

[50] *Id.* at p. 104:10-13.
[51] *Id.* at pp. 61:3-12, 63:1-64:11; Rec. Doc. 32-6, ¶¶ 11-16.
[52] Rec. Doc. 32-3, pp. 63-64.
[53] Rec. Doc. 32-6, ¶ 12.
[54] *Id.* at ¶ 13.
[55] *Id.*; Rec. Doc. 32-3, pp. 106:15-109:14, Exh. 8.
[56] Rec. Doc. 32-3, p. 109:1-10.

Peterson again noting deficiencies in Plaintiff's ability to lead projects, communicate, and solve problems.[57]

Notably, Plaintiff testified that, during the time she was an Accounts Payable Analyst under Peterson/Genre, she was placed on and completed a PIP. She admitted she does not have any facts to support that this decision was based on race.[58] Plaintiff testified that as of July 26, 2021 (the date she received the results of her performance assessment for the April 2020 – March 2021 assessment period), there were no employment decisions in the approximately 21-year period from 1990 to July 2021 she believes were based on her race.[59] She further testified that, because of her prior experience successfully completing a PIP, she understood that being put on a PIP was not the end of her employment but rather an opportunity to improve her job performance.[60] Plaintiff testified that the three "C" assessments she received for the 2018-2022 periods were not based on her race, and she agreed with the "C" rating she received for April 2019 – March 2020.[61] She further testified that her 2019 performance assessment was not based on her race.[62] The final copy of Plaintiff's April 2018 – March 2019 performance assessment cannot be located, but Plaintiff could not recall it being a "B" assessment (recalling the "B" she (allegedly) received was instead from 2016 or 2017, when she worked under Leah Ritter in a different position). Regardless, Plaintiff testified her April 2018 – March 2019 performance assessment was not based on her race.[63]

---

[57] *Id.* at pp. 81:25-85:6, 109:17-114:3, 172:10-174:8, 177:12-178:18, Exh. 9; Rec. Doc. 32-6, ¶ 14.
[58] Rec. Doc. 32-3, pp. 84:18-85:6; 109:11-14; 113:13-21.
[59] *Id.* at pp. 112:15-113:21 ("Q Just so we're clear, when we get up to this point, which is July 26th of 2021, is there any employment decision that's made with regard to you from 1990 to July of 2021, that you believe was based on your race, African American? A No.").
[60] *Id.* at pp. 81:25-85:6, 109:17-114:3, 172:10-174:8, 177:12-178:18, Exh. 9.
[61] *Id.* at pp. 104:15-106:13, Exh. 6, 8-9, 14.
[62] *Id.* (the final copy of this document could not be located).
[63] *Id.* at pp. 104:15-106:13, Exh. 6, 8-9, 14.

Around December 2021, Brett Murry ("Murry") replaced Peterson as Plaintiff's supervisor.[64] Murry and Peterson went through a transition of duties, which included Peterson providing input regarding her direct reports. Peterson communicated to Murry her overall assessment of Plaintiff, including Peterson's observation that, relatively, Plaintiff's peers performed better, led projects to reduce costs, were more proactive in communication styles, and were better at problem-solving.[65]

In January 2022, Murry began receiving complaints about Plaintiff's performance deficiencies, and he also personally observed them. Specifically, Murry noted Plaintiff's issues with aging invoices, delay in purchase order creation, failure to be proactive, failure to properly provide contractor guidance, failing to take ownership and/or responsibility for her own job duties and/or mistakes, and other errors.[66] The January 2022 complaints included those reported by Genre.[67] Plaintiff testified that, in the past, she never had any problem with Genre, and she did not believe Genre ever discriminated against her based on race before January 2022.[68] Murry directly expressed his disappointment with Plaintiff's performance issues both by email and during a March 10, 2022 meeting between the two of them.[69] Murry also informed his supervisor, the Site Manager of the plant, of Plaintiff's performance issues.[70]

Later in March 2022, Plaintiff and Murry met as part of the performance assessment process for the April 2021 – March 2022 assessment period. As in past

---

[64] Rec. Doc. 32-3, pp. 13:18-20, 63:1-9, 115:9-14, 116:1-117:6; Rec. Doc. 32-5, ¶¶ 3-4; Rec. Doc. 32-6, ¶ 15.
[65] Rec. Doc. 32-6, ¶ 15.
[66] Rec. Doc. 32-3, ECF pp. 225-235 (Exh. 11-13); Rec. Doc. 32-5, ¶¶ 5-7.
[67] See Rec. Doc. 32-3, pp. 120-123; 126-129; 131-135; 141; Exh. 11-13.
[68] Id.
[69] Rec. Doc. 32-3, pp. 120-123; 126-129; 131-135; 141; Exh. 11-13; Rec. Doc. 32-5, ¶¶ 5-7.
[70] Rec. Doc. 32-5, ¶ 7.

years, Plaintiff discussed the performance discussion summaries relating to her identified deficiencies.[71] Murry also received input from Peterson regarding April-November of the assessment period, as well as input from "knowledgeable others" ("KO"), a group comprised of peers and other supervisors/managers who worked with Plaintiff during the assessment period.[72] Again, Peterson's feedback noted Plaintiff's deficiencies in the areas of timeliness, speed, troubleshooting, and ownership/initiative – with Peterson observing Plaintiff failed to improve her performance despite multiple years of receiving similar guidance.[73]   The KO feedback likewise identified Plaintiff's troubleshooting deficiencies, a general lack of understanding of the reasoning behind steps necessary to complete a task, and her need to improve time management skills.[74]

Plaintiff's performance was next discussed during the July 13, 2022 meeting for the OCA assessment group to which Plaintiff was assigned.[75] The assessment group consisted of 24 employees holding OCA positions from Defendant's Houston Campus and from lube plants in Beaumont, Cicero, Kansas City, Olathe, Paulsboro, or Port Allen.[76] The meeting included the managers or supervisors of the 24 employees and was facilitated by HR.[77] The discussions about Plaintiff's performance included all the aforementioned problems: (1) poor time management skills, (2) unacceptable amounts of time to complete tasks, (3) not proactive, (4) poor troubleshooting skills, (5) lack of ownership, (6) routine errors, and (7) failure to regularly attend required quarterly calls.[78]

---

[71] Rec. Doc. 32-3, pp. 141:24-144:9, Exh. 14; Rec. Doc. 32-5, ¶¶ 8-13, Exh. 1.
[72] Rec. Doc. 32-3, ECF pp. 239-242 (Exh. 14); Rec. Doc. 32-6, ¶ 16; Rec. Doc. 32-5, ¶¶ 14-16.
[73] Rec. Doc. 32-6, ¶ 16.
[74] Rec. Doc. 32-5, ¶ 16.
[75] *Id.* at ¶ 17.
[76] *Id.*
[77] *Id.*
[78] Rec. Doc. 32-3, ECF pp. 239-242 (Exh. 14); Rec. Doc. 32-5, ¶ 18, Exh. 46.

This feedback was based on input from Peterson, KOs, the PDS, and Murry's own observations of Plaintiff's performance.[79] After reviewing and discussing all 24 employees, the HR and management/supervision participants for the assessment group came to a consensus that Plaintiff should be assigned a "D" category based on her absolute and relative performance.[80]

Although she claims Murry was solely responsible for her last bad assessment, in her deposition, Plaintiff admitted she has no knowledge of who participated in the decision to give her the "D" assessment.[81] In an unsent letter to Murry that Plaintiff prepared in August 2022, she did not include any allegation that her performance assessment was racially motivated.[82]

Based on her "D" assessment, per Defendant's MLRP process, Plaintiff was automatically placed in the MLRP program.[83] On August 11, 2022, Murry met with Plaintiff to discuss her performance, to advise her that she received a "D" assessment, and to advise that this placed her into MLRP.[84] Murry covered Slaughter's performance deficiencies with her, namely that she needed to improve her time management skills to provide more support to her team, needed to be more proactive and improve troubleshooting skills to help resolve issues, and needed to take ownership and initiative and not just forward along issues.[85] Murry also reviewed Plaintiff's MLRP options: (1) she could be placed on a PIP; (2) she could cease actively working but still receiver her

---

[79] *Id.*
[80] Rec. Doc. 32-5, ¶ 19, Exh. 46.
[81] Rec. Doc. 32-3, pp. 163-165.
[82] *Id.* at ECF pp. 243-247 (Exh. 16).
[83] Rec. Doc. 32-4, ¶ 12.
[84] Rec. Doc. 32-3, pp. 13:14-14:2, 156:5-165:24, 168:5-171:17, Exh. 14, 16; Rec. Doc. 32-5, ¶¶ 21-22, Ex. 1.
[85] Rec. Doc. 32-5, ¶ 21, Exh. 1.

pay/benefits and outplacement services for a designated period after which she would resign (the "PIL" option); or (3) she could retire (because she was retirement eligible). Murry informed Plaintiff she had 21 days to make this decision.[86] Defendant followed up with an email dated August 16, 2022, wherein Plaintiff was provided the details of the MLRP program, including that she must elect either the PIP, the PIL, or retirement.[87] Per the email, Slaughter had until September 6, 2022 to make her decision.[88] Plaintiff received this email when she was out on vacation, which she then extended until August 22, 2022.[89]

On August 23, 2022, Plaintiff began a disability leave of absence from which she did not return.[90] On September 3, 2002, Plaintiff emailed HR, informed them she was out on disability leave, and requested that HR send the link to make her MLRP selection to her personal email address.[91] On September 6, 2022, Plaintiff emailed Murry and HR employees:

> This email is being written to notify Exxon Mobil that I have selected Option 3 – Retirement under duress and protest. I also hereby appeal and dispute the needs improvement evaluation presented to me. My evaluation was done by Brett Murry who was appointed as our supervisor on January 1, 2022 and has only supervised me for 3 months during annual evaluation period. He supervised me from January[ ]1 to March 31, 2022. Not only is the rating period insufficient for him to do an evaluation, he has never said or suggested during my rating period or any other time suggested verbally or in writing that my work performance needed improvement. Prior to his arrival I help[ed] clear the backlog of other employees. I have worked for this company for over 30 years without any needs improvement evaluation. I am requesting a formal appeal of this annual evaluation that I was only supervised by him for 3 months. I am also the last African American office employee that works at this office. All of the others have been replaced. I

---

[86] *Id.* at ¶ 22.
[87] *Id.* at ¶ 23, Exh. 2; Rec. Doc. 32-3, at pp. 175:6-180:22, 182:8-183:20, Exh. 17.
[88] *Id.* at Exh. 2.
[89] Rec. Doc. 32-3, at p. 182.
[90] *Id.* at pp. 48:24-49:17, 182:25-183:2, 186:2-187:9, 200:12-25; Rec. Doc. 36-5, at ¶ 24.
[91] *Id.* at pp. 186:2-187:9.

am also preparing an EEOC claim if ExxonMobil does not address my complaint and appeal.[92]

Plaintiff's complaint was assigned to Employee Services Advisor Marissa Adame ("Adame") for investigation.[93]

Adame met with Plaintiff via teleconference in response to her complaint. During this meeting, Plaintiff explained why she believed her performance assessment was unfairly evaluated, arguing that Murry had not been supervising her long enough to evaluate her and reach his conclusions, and because she claimed to have had no prior "needs improvement" evaluations.[94] Adame reviewed Defendant's performance assessment process with Plaintiff, including the absolute and relative evaluations of the process, advised that performance assessment feedback is gathered from multiple sources (i.e., prior supervisor if they were supervisor during the assessment cycle and KOs with whom the employee interacts on a regular basis), and explained the checks and balances involved (i.e., HR review for unfair or biased treatment).[95]

Adame addressed Plaintiff's allegation that she was the last African American employee in her office, and, after further discussion, Plaintiff admitted that she did not know if the employees to whom she was referring had been terminated or if they had simply moved to other teams. Plaintiff also conceded that most of the individuals she named were not ExxonMobil employees but contractors.[96] During her deposition, Plaintiff admitted there were no other African American employees in her department before Murry

---

[92] *Id.* at ECF p. 252 (Exh. 20).
[93] Rec. Doc. 32-4, ¶ 14, Exh. 7.
[94] *Id.* at ¶ 15.
[95] *Id.*
[96] *Id.* at ¶ 16; Rec. Doc. 32-3, pp. 117:2-119:12, 197-198.

became the manager of the department in approximately December 2021; thus, his new role did not affect that demographic.[97]

Finally, Adame discussed Plaintiff's three MLRP options, including: the PIP, which Adame explained would be a detailed plan to help improve her performance and maintain employment; the PIL option, which Adame explained would allow Plaintiff's resignation, continued salary and health benefits for two months, and outplacement services; and the retirement option, which Adame explained allowed Plaintiff to retire on or before December 1, 2022; Plaintiff confirmed that she chose the retirement option.[98]

Plaintiff retired from ExxonMobil effective November 30, 2022.[99] No one from ExxonMobil said anything to Plaintiff to persuade her to select the retirement option; she chose that option voluntarily.[100] Despite Plaintiff's claims of being forced to retire under "duress and protest," she acknowledged under oath that, at the time she selected the retirement option, she knew she could have selected the PIP option and remained employed with the Company, and she had in fact done so successfully in the past.[101] Additionally, throughout her deposition, Plaintiff testified that she voluntarily retired from her employment with ExxonMobil and has not been able to work since her retirement due to medical issues.[102]

When asked about her email that she was retiring "under duress and protest," Plaintiff testified that this meant she "really did not want to retire," but she "felt that she

---

[97] *Id.*
[98] Rec. Doc. 32-3, pp. 207-208; Rec. Doc. 32-4, ¶¶ 15-17, Exh. 7; Rec. Doc. 32-5, ¶ 27. Although Plaintiff chose to retire, Adame nevertheless investigated Plaintiff's racial allegations and concluded that no company policies were violated in this regard. Rec. Doc. 32-4, ¶¶ 18-20.
[99] Rec. Doc. 32-3, pp. 210:8-14.
[100] *Id.* at pp. 180-182, 186-187, 189:15-22, 200:12-25, 210:8-14.
[101] *Id.* at pp. 172-173, 177-178, 188.
[102] *Id.* at pp. 52-53, 180:8-182:5, 186:23-187:9, 189:15-22, 203:3-5, 208:5-9, 227:2-5, 248:5-6.

needed to retire due to the situation between [Murry and me]" and she "wanted to protest the fact that [she] had some unfair treatments with [Murry]."[103] Importantly, Plaintiff has not asserted a claim for constructive discharge.

Plaintiff likewise admitted she has no evidence of similarly situated comparators for her race discrimination claim. Specifically, she admitted she has no knowledge of any other employees who received a "D" group performance assessment rating and were not placed in the MLRP program; and she knows of no white employees who were similarly situated to her that were treated better.[104] Regarding racial animus, Plaintiff admits she never heard Murry, Peterson, or Genre use any racial slurs or say anything racially derogatory, and she never heard anyone at the lubes plant say or do anything she would consider racially derogatory.[105]

Plaintiff offers almost no summary judgment evidence to controvert any of the facts presented by Defendant.[106] However, she contends that she was a satisfactory employee who never had a poor performance in the more than 30 years she was employed. Plaintiff maintains that, it was only after Murry became her supervisor that she received a poor performance review, and Defendant's "conduct toward [her] changed drastically."[107] Plaintiff argues her work environment became retaliatory, diminished her reputation, and made her unable to fulfill her duties. She claims she was "forced to either enter into a Performance Improvement Plan, Pay in Lieu, or retire."[108] Plaintiff made an internal

---

[103] *Id.* at p. 188:3-9.
[104] *Id.* at pp. 189:15-22, 226:18-227:5.
[105] *Id.* at pp. 223-224.
[106] The Court will present Plaintiff's version of events despite her failure to offer any evidentiary support for her claims, and her version is undermined by the evidence cited by Defendant, including Plaintiff's own deposition testimony.
[107] Rec. Doc. 37, pp. 1-2. Plaintiff cites to Murry's deposition; however, all that is attached to the memo is a 2-page Notice of Deposition for Murry. No transcript has been submitted to the Court.
[108] *Id.* at p. 2.

grievance about this performance review, "to no avail."[109]  Plaintiff contends that, "[f]acing hostile and retaliatory environment with no remedy in sight, Plaintiff was forced to retire on November 30, 2022."[110] Plaintiff maintains that prior to Murry becoming her supervisor, "she had received good reviews and been acknowledged by the Defendant for her stellar work numerous times."[111] Plaintiff also contends Murry did not supervise her long enough to effectively evaluate her performance, and only after she began to "push back" against Murry's "attacks on her work performance" did he give her the negative assessment.[112]

On or about January 24, 2023, Plaintiff submitted a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") that alleged race discrimination based on her retirement; on September 23, 2023, the EEOC notified Plaintiff it was closing the investigation and issued her a notice of her right to sue.[113] Defendant now moves for summary judgment on Plaintiff's only claim - Title VII race discrimination.

## IV.    LAW & ANALYSIS

### A.  FRCP 56 Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[114] "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[109] *Id*. Plaintiff again cites Murry's deposition which is not in the record.
[110] *Id*.
[111] *Id*. Plaintiff again cites Murry's deposition which is not in the record.
[112] *Id*. at pp. 2-3. Plaintiff again cites Murry's deposition which is not in the record.
[113] *Id*. at ECF pp. 260-266, Exh. 27-29.
[114] Fed. R. Civ. P. 56(a).

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"[115]

However, "the movant 'need not negate the elements of the nonmovant's case.'"[116] That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial."[117] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[118]

If the movant carries the burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"[119] The non-movant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[120]

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[121] Additionally,

> In resolving the motion, the court may not undertake to evaluate the
> credibility of the witnesses, weigh the evidence, or resolve factual disputes;
> so long as the evidence in the record is such that a reasonable jury drawing

---

[115] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).
[116] *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).
[117] *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)).
[118] *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).
[119] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted).
[120] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).
[121] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up).

all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[122]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[123] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[124] The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution.[125]

### B.  Title VII Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race.[126] Illegal discrimination is not the same as simple unfair treatment; indeed, "it has long been the law in this circuit that Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."[127] Moreover, "[m]anagement does not have to make proper decisions, only non-discriminatory ones,"[128] and Title VII is not a vehicle for judicial

---

[122] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (internal citations omitted).

[123] *See Celotex*, 477 U.S. at 325.

[124] *See id*. at 324.

[125] *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

[126] 42 U.S.C. § 2000e-2(a)(1).

[127] *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (citing *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affairs*, 647 F.2d 513 (5th Cir. 1981)).

[128] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

second-guessing of business decisions[129] because courts do not determine the validity of an employer's good faith belief about an employee's competence. Thus, the issue is not whether Defendant treated Plaintiff fairly or whether Defendant's decision was correct or erroneous; rather, the only issue is whether Defendant's decision was racially motivated.

A plaintiff must present proof of a discriminatory motive.[130] A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[131] Direct evidence is a "statement or written document showing [the employer's] discriminatory motive on its face."[132] The evidence must be direct and unambiguous, allowing for a conclusion without any inferences or presumptions that an impermissible factor motivated the decision.[133] Vague terms are insufficient to plausibly plead discriminatory intent.[134] Further, a plaintiff's subjective belief that a vague term is discriminatory, no matter how genuine the belief,

---

[129] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (5th Cir. 1995) (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving ... that those reasons were a pretext for unlawful discrimination").

[130] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[131] *Id.* (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

[132] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.").

[133] *Moss v. BMC Software, Inc.* 610 F.3d 917, 929 (5th Cir. 2010) (internal quotations omitted) (citing *EEOC*, 100 F.3d 1173 at 1181).

[134] *See, e.g., Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you people" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), *R.&R. adopted*, No. 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or indirectly race-based about the words "you people"), *aff'd* 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. FirstService Residential, Inc.*, No. 20--1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *Badaiki v. Schlumberger Holdings Corp.*, No. 4:20-CV-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021), *R.&R. adopted*, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted); *see also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

cannot provide the basis for relief.[135]

To prove race discrimination under Title VII, a plaintiff must establish that she is (1) "a member of a protected class" (2) "was qualified for the position" (3) "was subjected to an adverse employment action"; and (4) was replaced by someone outside the protected class or a similarly situated co-worker outside the protected class was treated more favorably.[136] If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse actions taken. [137] If the defendant satisfies this burden of production, the burden shifts back to the plaintiff, who must "offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[138] Plaintiff proceeds under a pretext theory.[139]

At the pretext stage, the issue is not whether the employer's reason was "correct or fair, but whether the decisionmakers honestly believed the [stated] reason."[140] Plaintiff must create an issue regarding whether "the employer honestly believes in the reasons it

---

[135] *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)).
[136] *Saketoo v. Tulane Univ. School of Medicine*, 510 F.Supp.3d 376, 386 (E.D. La. 2020)(citing *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).
[137] *Lee*, 574 F.3d at 259.
[138] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).
[139] *See* Rec. Doc. 37, p. 5. Plaintiff never discusses the mixed-motives theory.
[140] *Harville v. City of Houston*, 945 F.3d 870, 877 (5th Cir. 2019)(citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citation omitted).

offers, not whether [the employer] made a bad decision."[141] Title VII does not permit courts to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are discriminatory.[142] Courts are not to weigh the wisdom of particular employment decisions nor question every management decision and work assignment; rather, the singular issue is whether the employer's decision was motivated by discrimination.[143]

If an employer satisfies its burden of production by articulating a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture," and the plaintiff must prove that the defendant intentionally discriminated against the plaintiff because of a protected characteristic.[144] A plaintiff satisfies this burden by establishing pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence,[145] *i.e.*, that the employer's articulated reasons were not its true reasons but a pretext for discrimination.[146] A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[147] "Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the

---

[141] *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4, *7 (5th Cir. 1997) (citations omitted).

[142] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4 (5th Cir. 1997) (citing *Ruby v. Springfield R-12 Public School Dist.*, 76 F.3d 909, 912 n.7 (8th Cir. 1996)).

[143] *See McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

[144] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).

[145] *Harville*, 945 F.3d at 879 (citation omitted).

[146] *Goudeau*, 793 F.3d 470, 476 (5th Cir. 2015) (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

[147] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511.

nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper."[148]

Defendant is entitled to summary judgment on Plaintiff's race discrimination claim, which she has abandoned by failing to substantively oppose.  Plaintiff focuses her opposition on constructive discharge and retaliation, claims she originally asserted but pointedly abandoned in her Amended Complaint. Even assuming Plaintiff has established that she is the member of a protected class who was qualified for her position, she offers no summary judgment evidence that she was subjected to an adverse employment action or that she was replaced by someone outside the protected class or a similarly situated co-worker outside the protected class was treated more favorably.  Despite Plaintiff's contradictory testimony that she voluntarily chose to retire but that she did so "under duress and protest," she admitted that the first option under the MLRP would have allowed her to stay employed and complete the PIP, as she had done successfully before.[149] Although Plaintiff testified that she felt Murry "harassed" her by repeatedly asking if she was going to retire, Plaintiff has not asserted a hostile work environment or a constructive discharge claim. Moreover, accepting Plaintiff's testimony as true, the environment Plaintiff described does not rise to the level of conduct required to satisfy either rigorous

---

[148] *Douglas v. St. John Baptist Parish Library Board of Control*, No. 21-599, 2022 WL 898746 at *12 (E.D. La. Mar. 28, 2022)(citing *Harville*, 945 F.3d at 876-77(citation omitted)).
[149] Rec. Doc. 32-3, pp. 172-173, 177-178, 188.

standard. Finally, Plaintiff admitted that she had no comparators to offer, and she failed to show evidence that she was replaced by someone outside her protected class.[150]

Even if Plaintiff could carry her *prima facie* burden for race discrimination, her pretext evidence is, at best, paltry. First, as this Court has previously held: "It is axiomatic that unsupported arguments and representations of counsel in a brief are not competent summary judgment evidence, and [a plaintiff] cannot survive summary judgment based on the impassioned statements of counsel and evidence referenced or promised but not presented in opposition to Defendant's summary judgment motion."[151]

Plaintiff's statements and arguments in her Opposition wildly overstate and mischaracterize Plaintiff's own testimony regarding both her work performance and her work environment. For example, Plaintiff argues she "never had a poor performance in her 30 year plus career" with ExxonMobil until Murry became her supervisor, and then she "was subjected to escalating retaliatory treatment aimed at diminishing her reputation and ability to fulfill her duties."[152] Plaintiff emphasizes she was subjected to a "hostile and retaliatory environment" and was "forced to retire" because Murry "attack[ed] her performance," which required Plaintiff to "push back."[153] Plaintiff argues that, only after she "push[ed] back" against Murry, did she receive a poor performance review.[154] However, both the allegations in Plaintiff's operative Complaint and her deposition testimony undermine the claim that she was a model employee with only satisfactory reviews until Murry arrived. Paragraph 9 of Plaintiff's Amended Complaint reads:

---

[150] *Id.* at pp. 189:15-22, 226:18-227:5.
[151] *Lewis v. Eye Care Surgery Center, Inc.*, No. 21-475-SDD-RLB, 2023 WL 8880348, at *4 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).
[152] Rec. Doc. 37, pp. 1-2. Plaintiff cites no evidence in support of these claims.
[153] *Id.* at p. 2. Plaintiff cites Murry's deposition, but again, Plaintiff failed to submit Murry's Deposition as evidence in this case; rather, she submitted only a 2-page Notice of Deposition. *See* Rec. Doc. 37-2.
[154] *Id.* at p. 2.

> Plaintiff's last five assessments were as follows: April 1, 2017 to April 1, 2018 she was assessed a letter "C"/Inventory Control Analyst; April 1, 2018 to April 1, 2019 she was assessed a letter "B"/Inventory Control Analyst Team Lead; April 1, 2019 to April 1 2020 she was assessed a letter "C" on the high side/Accounts Payable Analyst; April 1, 2020 to April 1, 2021 she was assessed a letter "C" same as the previous assessment; and finally April 1, 2021 to April 1, 2022 under Murry's supervision, she was assessed a letter "D".

This is not a "stellar" work performance history.  Further, during her deposition, Plaintiff acknowledged each performance review, the assessment given, and what was required of her to successfully complete a previous PIP.[155]   Plaintiff testified that she did not believe any of the prior performance assessments were based on her race.[156]   The argument that Plaintiff only received a negative assessment after Murry arrived is simply belied by the record and Plaintiff's own allegations in this case.

Defendant points out that Plaintiff's timeline regarding her complaint of discrimination and poor work assessment is incorrect.  The record establishes that Plaintiff's complaint of discrimination came *after* her final "D" assessment.[157] Additionally, Defendant presents evidence that several supervisors and "knowledgeable others" provided input that resulted in Plaintiff's "D" assessment; Plaintiff offered no evidence to refute this fact, and Plaintiff has offered no evidence that Murry's voice alone resulted in the "D" assessment.[158]

Plaintiff challenges Murry's qualification to assess her work performance and the ultimate conclusion that she was assessed a "D"; she also contends Defendant failed to investigate her discrimination claims. Plaintiff's challenges are irrelevant to the Court's

---

[155] Rec. Doc. 32-3, pp. 63-64, 81-85, 104-106, 109-114, 172-174. 177-178.
[156] *Id.*
[157] Rec. Doc. 41, p. 2.
[158] Rec. Doc. 32-3, pp. 163-165; Rec. Doc. 32-4, ¶ 15.

analysis under Title VII.  Protected classes under Title VII are not shielded from business decisions and applicable company policies and procedures; they are only protected from decisions based on their protected status.  Whether or not the Court believes that Plaintiff's assessment, retirement, or discrimination complaint were handled correctly is not the issue; rather, it is the Court's sole responsibility to determine if there is summary judgment evidence demonstrating a genuine issue of fact as to whether any of Defendant's decisions were motivated by Plaintiff's race. Plaintiff has failed to provide any evidence of racial animus for these business decisions.

Notably, Plaintiff admitted that none of her supervisors, including Murry, ever made a single racially derogatory comment to her. She likewise admitted that her past performance reviews (prior to Murry) were not based on race. Plaintiff offers only her subjective, speculative belief that Defendant's conduct was racially motivated because she was the only African American employee left in her department.  Plaintiff contends her supervisor approved overtime for a female employee but denied hers; no evidence is cited for this statement nor is any context provided.[159] Plaintiff contends she reported her exclusion from important corporate stewardship meetings that other white employees attended; however the citation for this statement does not support her claim.[160]  Rather, this testimony undermines her claim by showing that Plaintiff attended numerous stewardship meetings.  The cited portion consists of Plaintiff's testimony that in several stewardship meetings, white employees' presentations received positive comments like "good job" while her presentations received no praise.[161] Plaintiff references other

---

[159] Rec. Doc. 37, p. 4.
[160] *Id.* at p. 6 (citing Rec. Doc. 37-4, pp. 147-148).
[161] Rec. Doc. 37-4, pp. 147-148.

"disparate treatment" she reported that went unaddressed; this statement is supported by Plaintiff's testimony that Murry planned some team reward events while she was scheduled to be out on vacation.[162]

When asked why she attributed this to her race rather than her job performance, Plaintiff testified that it was because she was the only African American employee left in her group.[163]  This does not carry Plaintiff's summary judgment burden.  The Fifth Circuit has held that a mere difference in race, "[w]ithout more, ... does not support a finding that [plaintiff] suffered race ...-based harassment."[164]

Accordingly, Plaintiff has failed to demonstrate genuine disputes of material fact relating to her claim that her "D" assessment and placement in the MLRP program was a pretext for race discrimination.

### C.  Other Argued Claims

As previously established, Plaintiff amended her Complaint to make clear that the only claim asserted under Title VII is for race discrimination.  Accordingly, the Court will not consider arguments related to constructive discharge or retaliation as these are not viable claims before the Court.  Regarding her purported retaliation claim, the Court notes that the same pretext analysis set forth above would likewise result in a grant of summary judgment were the claim viable.

---

[162] *Id.* at pp. 153-155.
[163] *Id.* at p. 147:19-25.
[164] *Byrnes v. City of Hattiesburg*, 662 Fed.Appx. 288, 290-91 (5th Cir. 2016) (citing *Hernandez*, 670 F.3d at 652).

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment[165] is GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana this 28th day of January, 2026.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[165] Rec. Doc. 32.